WOLLMAN, Circuit Judge.
Regina Barton, as personal representative for the Estate of Jeffry Alan Barton (Barton), filed suit under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 (ACRA), Ark.Code Ann. § 16-123-105, alleging that Arkansas State Trooper Zachary Owens and other defendants denied Barton medical care, in violation of his Fourth, Eighth, and Fourteenth Amendment rights. Trooper Owens appeals from the district court’s[1] denial of his motion to dismiss on the basis of qualified and statutory immunity. We affirm.
I.
On September 12, 2011, Barton was involved in a single-vehicle accident at an overpass located on U.S. Highway 270. Owens arrived at the accident scene, along with Malvern, Arkansas, Police Officer Tim Callison and other law enforcement officials. After the officers arrived, Barton almost fell to the ground on multiple occasions. He swayed and used his truck to steady himself. After a portable breath test indicated that Barton’s blood-alcohol concentration was .11, the officers placed Barton under arrest. During the search of his person, Barton fell to the ground and was not responsive. Callison checked Barton for a pulse after he did not respond to questions or commands. Because Barton could not stand on his own, Callison *963 and Owens lifted Barton and placed him into Owens’s patrol car.[2]
Owens transported Barton to-the Hot Spring County Detention Center. Barton was unable to answer questions' during the booking process, and when he did speak, his speech was slurred. At one point during the booking process, Barton fell off a bench onto the floor.
Barton was incarcerated in the Detention Center as a pretrial detainee and placed in a holding room, to which he was unable to walk without being assisted by jail trustees, Barton was found dead in the holding room shortly, after midnight on September 13, 2011. An. autopsy determined the cause of death to be a heart condition — anomalous right coronary, artery, fatty infiltration of right ventricle and atrium of heart. The autopsy also revealed a small amount of ethanol, a small amount of hydroeodone, and a non-toxic level of an anti-anxiety medication.
Owens moved to dismiss the complaint for failure to state a claim on which relief could be granted, Fed.R.Civ.P. 12(b)(6), asserting that he was entitled to qualified immunity from the federal claim and statutory immunity from the ACRA claim, Ark. Code Ann. § 19-10-305(a). The district court dismissed the claims against Owens in his official capacity, but otherwise denied the motion, leading Owens to file this appeal.
II. ■
Although ordinarily a denial of a pretrial motion is not appealable, interlocutory appeals from the denial of qualified and statutory immunity are permitted under the collateral-order doctrine. Burton v. Ark. Sec’y of State, 737 F.3d 1219, 1228 (8th Cir.2013). We review de novo the denial of a motion to dismiss based on qualified and statutory immunity. Hager v. Ark. Dep’t of Health, 735 F.3d 1009, 1013 (8th Cir.2013). “Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff.” Hager, 735 F.3d at 1013 (citing Gross v. Weber, 186 F.3d 1089, 1090 (8th Cir.1999)).
A. Qualified Immunity
' State officials are entitled to qualified immunity for their discretionary acts unless those acts “violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We thus ask: “(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation.” Howard, v. Kan. City Police Dep’t, 570 F.3d 984, 988 (8th Cir.2009).
1. Constitutional Violation
Owens argues that the facts alleged in the complaint do not establish that he violated Barton’s constitutional rights. A complaint must include “a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed.R.Civ.P. 8(a)(2). The Federal Rules require more than “ ‘labels and conclusions’ or ‘a formulaic recitation of the elements of a cause of action.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. *964 1955, 167 L.Ed.2d 929 (2007)). “[A] complaint must contain sufficient factual matter, -accepted as true, to ‘state a claim to relief that is plausible on its face.’ ” Id. (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court.to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Id. We thus accept as true the facts alleged, but not legal conclusions or “[tjhreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.” Id
Owens argues that the claim against him is not facially plausible, because the complaint mentions him in only four paragraphs, which he says do not allege a constitutional violation. The paragraphs allege that Owens had direct contact with Barton in-the hours leading up to his death, responded to the scene of the accident, helped Callison lift Barton from the ground and place him in his patrol car, and transported Barton to the detention center. J.A, 3, 4-5. When those paragraphs are read in the context of the full complaint, however, the complaint states a facially plausible claim against Owens. As set forth above, the complaint alleges that Barton became unconscious at the scene of a vehicle accident, that Callison checked Barton’s pulse because he was not responsive, that Barton could not stand or walk on his own,, and that Barton could not answer questions and fell off the bench onto the floor at the detention center. J.A. 4-5. Accepting these allegations as true, it is reasonable to infer that Owens observed Barton’s symptoms both at the scene of the accident and at the detention center. Thus, the proper inquiry is whether, viewing the facts in the light most favorable to the plaintiff, Owens’s failure to take some action to secure medical care for Barton violated Barton’s constitutional rights. As we discuss below, we conclude that it does.
To determine whether Owens’s failure to seek medical care for Barton violated Barton’s constitutional rights, we apply the Eighth Amendment “deliberate indifference” standard.[3] See Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir.2014) (applying the Eighth Amendment deliberate-indifference standard to a pretrial1 detainee’s élaim of failure to provide medical care in violation of the due process clause of the Fourteenth Amendment). The deliberate-indifference standard requires “both an objective and subjective analysis.” Hall v. Ramsey County, 801 F.3d 912, 920 (8th Cir.2015)' (quoting Scott v. Benson, 742 F.3d 335, 340 (8th Cir.2014)).
 To meet the objective component of the deliberate-indifference standard, the complaint must plead facts sufficient to demonstrate that Barton suffered from an objectively serious medical need. See Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir.2006). “To be objectively serious, a medical need must have been ‘diagnosed by a physician as requiring treatment’ or must be ‘so obvious that even a layperson would easily recognize the necessity for a doctor’s attention.’ ” Jackson, 756 F.3d at 1065 (quoting Scott, 742 F.3d at 340). Owens argues that the complaint' does not *965 plead an objectively serious medical need because Barton’s behavior would not indicate to a layperson that he was suffering from a heart condition that would later kill him. But the complaint was not required to allege that Owens knew of Barton’s heart condition, only that Barton-showed obvious signs of an objectively serious medical need. We determine whether an objectively serious medical need .exists based on the attendant circumstances, irrespective of what the officer -believes the cause to be. See Vaughn v. Gray, 557 F.3d 904, 909 (8th Cir.2009) (denying qualified immunity to officers who claimed thpt they thought a prisoner’s vomiting “was caused by the ingestion of shampoo”); see also McRaven v. Sanders, 577 F.3d 974, 981 (8th Cir.2009) (denying qualified immunity where an inmate exhibited symptoms of. severe intoxication and circumstances suggested that the inmate had overdosed on prescription medications); Grayson, 454 F.3d at 809 (granting qualified immunity where an arrestee was up-der the influence of methamphetamines, but “sat calmly in the back of the patrol car, followed directions,, answered questions posed, and remained quiet and seated on a bench inside the jail”). Although we can assume that most individuals arrested on intoxication-related charges are not in obvious need of prompt medical care, the complaint here has stated sufficient facts to. show that Barton was experiencing a medical need so obvious that a layperson would recognize that he needed prompt medical attention. Accepting once again the truth of the complaint’s allegations, Barton fell down at the scene of his accident, could not walk on his own, and became unresponsive such that an officer was obliged to check for a pulse. At the detention center, he could not answer questions and could not remain seated without falling over. While some of. these alleged symptoms are consistent with those exhibited by intoxicated persons, when viewed in their totality and in the light most favorable to the non-moving party, they were sufficient to establish that Barton suffered from an objectively serious medical need.
The subjective component requires a showing that Owens actually knew that Barton needed medical care and disregarded “a known risk to the [arrestee’s] health.” Gordon ex rel. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir.2006) (citing Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir.2003)). “This showing requires a mental state ‘akin to criminal recklessness.’” Jackson, 756 F.3d at 1065 (quoting Gordon ex rel. Gordon, 454 F.3d at 862). A complaint must allege facts that demonstrate “more than negligence, more even than gross negligence.” Id. (quoting Fourte v. Faulkner County, 746 F.3d 384, 387 (8th Cir.2014)). Such a mental state can be inferred,, however, from facts that demonstrate that a medical need was obvious and that the officer’s response was “obviously inadequate.” Thompson v. King, 730 F.3d 742, 747 (8th Cir.2013) (“However, if a response to a known risk is obviously inadequate, this- may lead to an inference that the officer ‘recognized the inappropriateness of .his conduct.’ ” (quoting Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir.2009))). From his observations at the scene of the accident and at the Detention Center, Owens had direct knowledge of Barton’s obvious need for prompt medical attention and yet took no steps to secure such care for Barton. Accordingly, we hold that the allegations in the complaint were sufficient -to create an inference that Owens was deliberately indifferent to Barton’s need for medical attention.
2. Clearly Established
Owens argues that Barton’s constitutional right was not clearly estab *966 lished, because he acted as a reasonable officer would under the circumstances. “For a right to be clearly established, ‘[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.’” Meehan v. Thompson, 763 F.3d 936, 940 (8th Cir.2014) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.O. 3034, 97 L.Ed.2d 523 (1987)). We adopt the perspective of a reasonable officer at the scene, taking into account the information he possessed at the time. Id. “[F]or a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question ‘beyond debate.’ ” Hollingsworth v. City of St. Ann, 800 F.3d 985, 989 (8th Cir.2015) (quoting City & County of San Francisco v. Sheehan, — U.S. -, 135 S.Ct. 1765, 1774, 191 L.Ed.2d 856 (2015)). Whether an officer’s denial of medical care violates an arrestee’s constitutional rights is thus context-specific, for we do not “define clearly established law at a high level of generality.” Mullenix v. Luna, — U.S. -, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). The appropriate inquiry, then, is whether a reasonable officer in September 2011 would have understood that failing to seek medical care for a post-vehicular accident arrestee who exhibited the symptoms Barton exhibited would violate the arrestee’s constitutional rights. We conclude that McRaven v. Sanders and Grayson v. Ross, decided in 2009 and 2006, respectively, provide the relevant precedent.
McRaven involved a pretrial detainee who was arrested for driving while under the influence of drugs. 577 F.3d at 978. During the booldng process, the officers collected a urine sample that indicated the detainee was under the influence of marijuana, benzodiazepines, and opiates. Id. The detainee also informed the officers that he had taken several psychotropic medications. Id. A drug influence evaluation indicated that he appeared to have poor coordination, slurred- speech, flushed skin on his face, and droopy eyelids; his blood pressure and temperature were “down”; and a blood alcohol test indicated that he had not consumed any alcohol. Id. The officers consulted with a nurse at the facility regarding whether they should transport the detainee to the hospital. The nurse, unaware of the results of the detainee’s drug screening, concluded that he did not require hospitalization and that he was simply “sleeping off alcohol.” Id. at 979. Later, the detainee was discovered in his cell, no longer breathing, which resulted in severe brain damage. Id. His guardian brought a § 1983 claim against the officers at the detention center, alleging that the officers were deliberately indifferent to the detainee’s medical need. Id. The officers moved for summary judgment, claiming they were entitled to qualified immunity because they relied on the nurse’s conclusion that the detainee did not have an objectively serious medical need. Id. at 980-81. We rejected this argument and held that in light of the officers’ knowledge of the attendant circumstances, they could not rely on the nurse’s recommendation. See id. at 981 (noting that the officers were aware of the drugs the detainee had consumed and that “circumstances suggested [the detainee] did not consume [them] in prescribed doses,” that the detainee “exhibited symptoms of severe intoxication” and was clearly impaired, and that the nurse had not known all of the relevant facts when she made her recommendation).
By contrast, in Grayson, we granted qualified immunity to an arresting officer and a booking officer after a pretrial detainee died from “excited delirium as a *967 result of acute methamphetamine intoxication and physical struggle.” 454 F.3d at 808. Although the officers knew that the detainee had used methamphetamine, they did not know how much he had consumed. Id. at 806. During the detainee’s arrest, he “sat calmly in the back of the patrol car, followed directions,, [and] answered questions.” Id. at 809. Similarly, while he was being booked and for the first several hours of his detention, he was non-combative and able to answer questions. Id, at 810. We concluded that the detainee did not have an objectively serious medical need that would have, been. obvious to a layperson because his symptoms did not indicate a medical emergency. Id. at 809.
In both McRaven and Grayson, we considered the severity of the intoxicated detainees’ symptoms and the context in which the symptoms presented. Thus, a reasonable officer in 2011 would have recognized that failing to seek medical care for an intoxicated arrestee who exhibits symptoms substantially more severe than ordinary intoxication violates the' arres-tee’s constitutional rights, all the more so when the surrounding circumstances indicate that a medical emergency exists. See Thompson, 730 F.3d at 747-49 (discussing Grayson). As recounted above, the complaint alleged facts that Barton exhibited symptoms substantially more serious than ordinary intoxication and that Owens was aware of these symptoms and of the" fact that Barton had recently been in a vehicular accident. Accordingly, we. hold that, under these circumstances, a reasonable officer would “comprehend that he was violating [Barton’s] dearly established constitutional rights.” See Gladden v. Richbourg, 759 F.3d 960, 964 (8th Cir.2014); see also Estate of Crouch v. Madison County, 682 F.Supp.2d 862, 877 (S.D.Ind.2010) (noting that a prisoner had an objectively serious medical need when he became unresponsive). It should go without saying that our holding should be read in light of the fact that it is based on the district court’s denial of a, Fed.R.Civ.P. 12(b)(6) motion. At this stage in the proceedings,, we are required to treat the facts alleged in the complaint as true and make all reasonable inferences in favor of the plaintiff. This is a highly deferential standard, as opposed to that at the summary judgment stage, at which the parties must support their factual assertions with citations to an established record. We hold only that the complaint, marginally sufficient though it may be, has stated a claim, not that it will withstand further scrutiny.
B. Statutory Immunity
Owens argues that he is entitled to statutory immunity under the ACRA because the complaint does not contain facts sufficient to demonstrate that Owens acted with malice. As relevant to this appeal, the ACRA states, “Officers ... of the State of Arkansas are immune from liability and from suit ,.. for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.” Ark. Code Ann. § 19-10-305(a). The Supreme Court of Arkansas has defined malice as
the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent----A conscious violation of the law ... which operates to the prejudice of another person. A condition of the mind showing a heart ... .fatally bent on mischief.
Fuqua v. Flowers, 341 Ark. 901, 20 S.W.3d 388, 391 (2000) (quoting Malice, Black’s Law Dictionary (6th ed. 1990)). Owens bases his argument on the premise that the statute'provides more protection than qualified immunity. But the Supreme Court of Arkansas consistently has stated *968 that “the immunity provided by section 19-10-305(a) is similar to that provided by the Supreme Court for federal civil-rights claims.” Simons v. Marshall, 369 Ark. 447, 255 S.W.3d 838, 842 (2007) (citing Fegans v. Norris, 351 Ark. 200, 89 S.W.3d 919, 924 (2002)). But see Langford v. Norris, 614 F.3d 445, 465 (8th Cir.2010) (denying qualified immunity to prison officials for plaintiffs federal civil-rights claims; but granting statutory immunity for the plaintiffs state law claims). We have concluded that the complaint alleges facts sufficient to create an inference that Owens acted with deliberate indifference, and we similarly conclude that the complaint alleges facts sufficient to create an inference of malice.
III.
The judgment denying immunity is affirmed.

. The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, now retired.

. On- appeal, Regina Barton has asserted several facts that she did not allege in the complaint, Our review of a motion to dismiss is limited to the facts alleged in the complaint, see Fed.R.Civ.P. 12(d), and we have considered only those allegations.

. We note that in our recent decision, Bailey v. Feltmann, 810 F.3d 589 (8th Cir.2016), we acknowledged disagreement regarding the proper standard to apply in denial-of-medical-care claims brought by arrestees. See Bailey, 810 F.3d at 592-93; see also Kingsley v. Hendrickson, — U.S. -, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (holding that the Fourteenth Amendment’s objective reasonableness standard governs excessive-force claims brought by pretrial detainees).