# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-2197
_____

Christopher Kiesling; Katy Kiesling

*Plaintiffs - Appellees*

v.

Doc Holladay, Individually, and in his official capacity as Sheriff of Pulaski County, AR; Mark Swagerty, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; Cardarious Walker, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; James Foster, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; Christopher Holmes, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; Austin McKinniss, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; Kelle McAvoy, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; Zachary Warren, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; James Potter, "Jim" Individually, and in his official capacity as a Pulaski County Sheriff Deputy; Adam Robertson, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; James Kock, Individually, and in his official capacity as a Pulaski County Sheriff Deputy; Bill Howell, in his individual capacity only; Joe Williams, in his individual capacity only; Gary Don Stell, in his individual capacity only; Mike Nast, in his individual capacity only; Travis Thorn, in his individual capacity only; Matt Flowers, in his individual capacity only

*Defendants*

Ross Spurlock, in his individual capacity only

*Defendant - Appellant*

Pulaski County Arkansas

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 8, 2017
Filed: June 9, 2017

_____

Before RILEY, Chief Judge,[1] GRUENDER, Circuit Judge, and GRITZNER, District Judge.[2]

_____

GRUENDER, Circuit Judge.

Corporal Ross Spurlock of the Arkansas Game and Fish Commission ("AGFC") appeals the denial of his motion to dismiss various claims related to the search of a residence. Although Spurlock conducted the challenged search pursuant to a warrant, the district court determined that he was not entitled to qualified immunity because a reasonable officer would have known that the warrant should not have issued based on the information Spurlock provided to the issuing court. We reverse because it was not entirely unreasonable for Spurlock to believe that his

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

affidavit established sufficient indicia of probable cause for the search and seizure of the items listed in the warrant.

The AGFC opened an investigation into Christopher ("Vollie") and Katy Kiesling in March 2014, after receiving an anonymous tip that Katy was in possession of a small, live deer. Spurlock became involved in the case later that month when he obtained information from the Pulaski County Sheriff's Office ("PCSO") suggesting that the Kieslings were keeping the deer as a pet, in violation of section 9.14 of the AGFC Code.[3] *See* Ark. Code R. § 002.00.1-09.14. During a recorded jailhouse call, Vollie indicated that he was in possession of a recently injured "button buck" and that, while on the phone, he was standing on his porch "watching him through the window." Spurlock interpreted this to mean that the Kieslings were keeping the deer inside their home—a separate offense under the AGFC Code. *See id.* Based on his experience and training, he also concluded that the deer was captured after July 1, 2012, the cutoff for the grandfather exception to section 9.14's prohibition on keeping deer as pets, given that button bucks are by definition less than one year old.

Citing the above information as probable cause to believe that there was an illegally held pet deer at the Kiesling residence, Spurlock prepared an affidavit for a warrant to search their home and seize certain items. The affidavit described the residence and stated that it contained various items "tending to demonstrate that a criminal offense has been committed, to-wit: Arkansas Game and Fish Commission Code 9.14 (Native Wildlife Pets Restricted)." Specifically, the affidavit suggested that there was probable cause to believe that the Kieslings were "conceal[ing] . . . certain property, to-wit: a male whitetail deer, to wit: pens or cages, deer food, ledgers documenting the capture or sale of wildlife, photographs of captured or

---

[3]Contrary to the Kieslings' assertion, the act of violating an AGFC regulation constitutes a criminal misdemeanor under Arkansas law. *See State v. Herndon*, 226 S.W.3d 771, 774 (Ark. 2006).

illegally taken wildlife, specifically deer." Based on this affidavit, a state court judge issued a search-and-seizure warrant for the Kiesling residence. The warrant directed law enforcement to search the Kiesling residence and seize the following evidence:

> (1) a button buck whitetail deer[;] (2) books, records, receipts, notes, ledgers, and other personal papers to the capture or sale of wildlife, specifically deer, pens or cages of housing wildlife[;] (3) photographs, in particular photographs of captured or illegally taken wildlife, specifically deer[;] (4) indicia of ownership of the above described property; (5) computers, digital and/or electronic storage devices, and any digital and/or electronic remov[able] media, tending to demonstrate that criminal offenses have been committed[;] (6) and all other instrumentalities including firearms and monies of criminal activity . . . .

On March 21, 2014, Spurlock and other AGFC officers executed the warrant. The agents seized a live deer from the home and also discovered evidence of other crimes, which prompted Spurlock to contact the PCSO. The PCSO obtained its own search warrant, searched the premises pursuant to that warrant, and arrested Vollie on firearm and drug possession charges. Subsequently, during a hearing in the State's criminal case against Vollie, a different state court judge found that Spurlock's affidavit lacked sufficient indicia of probable cause to justify the initial warrant, and thus, the court granted Vollie's motion to suppress the evidence obtained from both searches. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963) (excluding evidence obtained as "fruit of the poisonous tree" of an unlawful action). The State then dropped all charges against Vollie.

Thereafter, the Kieslings brought an action against Spurlock, various law enforcement agents, and Pulaski County under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, claiming that the initial search violated their constitutional rights and further alleging various state tort-law claims. The defendants then filed a motion to dismiss, asserting entitlement to qualified immunity because the alleged constitutional violations stemmed from a search conducted pursuant to a duly issued

search warrant. The district court granted the motion as to all of the defendants except Spurlock. While acknowledging "that qualified immunity is usually granted to law enforcement officers operating under a warrant issued by a neutral magistrate judge," the court concluded that Spurlock, as the officer who prepared the warrant affidavit, "is not entitled to qualified immunity because a reasonably competent officer possessing the information available to [him] would have known that there was not probable cause to search for any of the items listed in the warrant except for the deer." Spurlock timely filed this interlocutory appeal. *See Barton v. Taber*, 820 F.3d 958, 963 (8th Cir. 2016) ("Although ordinarily a denial of a pretrial motion is not appealable, interlocutory appeals from the denial of qualified and statutory immunity are permitted under the collateral-order doctrine.").

"We review *de novo* the denial of a motion to dismiss on the basis of qualified immunity." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005). "To prevail at this stage of the proceedings, defendants must show that they are entitled to qualified immunity on the face of the complaint." *Id.* (citation omitted). The exhibits attached to the Kieslings' second amended complaint, including a copy of the search warrant affidavit and the warrant itself, "are part of the complaint for this purpose." *See id.* (citations omitted); *see also* Fed. R. Civ. P. 10(c).

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam)). Whether an official may be held personally liable for an official act "generally turns on the 'objective legal reasonableness' of the [official's] action, assessed in light of the legal rules that were

'clearly established' at the time it was taken." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

The parties agree that the Supreme Court's opinion in *Messerschmidt v. Millender* guides our analysis of qualified immunity where an alleged Fourth Amendment violation involves a search or seizure conducted pursuant to a warrant. 565 U.S. 535 (2012). Relying on its earlier decisions in *United States v. Leon*, 468 U.S. 897 (1984), and *Malley v. Briggs*, 475 U.S. 335 (1986), the *Messerschmidt* Court recognized that a warrant generally confers a "shield of immunity" to officers acting within the scope of its authority. 565 U.S. at 546-48, 556. In such circumstances, the Court explained, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Id.* at 546. However, this rule is not absolute. The Supreme Court long ago rejected the notion that officers are automatically entitled to qualified immunity because a magistrate approved a warrant application, *Malley*, 475 U.S. at 345, and *Messerschmidt* reiterated the "exception allowing suit . . . where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" 565 U.S. at 547 (quoting *Leon*, 468 U.S. at 923). At the same time, *Messerschmidt* emphasized that "the threshold for establishing this exception is a high one, and it should be." *Id.* Given the "sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination," *id.* (quoting *Malley*, 475 U.S. at 346 n.9), the Court predicted, "[t]he occasions on which this standard will be met may be rare," *id.* at 556.

Spurlock contends that the district court erred in finding that his conduct falls within the narrow scope of the exception identified in *Messerschmidt*. Primarily, he argues that "the District Court's acknowledgement that there was probable cause for the deer is *in and of itself* sufficient to demonstrate the warrant was not 'based on an affidavit *so lacking* in indicia of probable cause as to render official belief in its existence *entirely unreasonable*.'" *See id.* at 547. Alternatively, he challenges the

-6-

district court's determination that the warrant affidavit failed to establish probable cause with respect to the other items the warrant authorized to be seized. Whether or not the existence of probable cause for one item in a warrant is sufficient to immunize defects as to all of the other items, we conclude that Spurlock retains the shield of immunity conferred by the warrant because it was not entirely unreasonable for him to believe that his affidavit established sufficient probable cause for the search and seizure of the items included in the warrant.

As an initial matter, it is important to emphasize that the relevant inquiry in cases such as this is not whether a warrant application was, in fact, sufficient to establish probable cause of criminal activity. Rather, when a search or seizure is conducted pursuant to a duly issued warrant, we must determine whether it was "entirely unreasonable" for an officer to *believe* that the warrant application established probable cause.[4] *Id.* at 553, 556; *see also United States v. Hallam*, 407 F.3d 942, 946 (8th Cir. 2005) (holding that it was objectively reasonable for an officer to rely on the validity of a warrant where "the [officer's] affidavit, while scant, was not so utterly lacking in facts as to render [his] belief that it established probable cause 'entirely unreasonable.'"). The facts of *Messerschmidt* help clarify just how much "breathing room" this standard affords law enforcement officers like Spurlock. *See* 565 U.S. at 546 (citation omitted). The target of the warrant in *Messerschmidt* was a known gang member who was reported to have fired a sawed-off shotgun with a pistol grip at his girlfriend because she had called the police on him. *Id.* at 539-41. In addition to the weapon used in the assault, of which the police had a precise

---

[4]Given the stark contrast between our analysis of qualified immunity and that of an underlying constitutional right, we do not share the dissent's concern that our "opinion could potentially permit overbroad, and thus unconstitutional, warrants . . . substantially weakening the Fourth Amendment's protections against general searches." *Post* at 12. To be clear, our analysis is limited to the question of whether Spurlock, who acted pursuant to a duly issued warrant, is entitled to qualified immunity under *Messerschmidt*.

description, the affiant-officer included an extensive list of other items to be seized in the warrant application—ranging from "[a]ll handguns, rifles, or shotguns of any caliber" and "[a]ll caliber of ammunition, miscellaneous gun parts, gun cleaning kits, [and] holsters" to "receipts or paperwork" related to the firearms, and even evidence of the target's street gang membership, which included "writings or graffiti" and "photographs or photograph albums." *Id.* at 541-42. The warrant affidavit also identified the two crimes under investigation as spousal assault and assault with a deadly weapon. *Id.* at 550.

Echoing the Kieslings' argument in this case, the plaintiffs in *Messerschmidt* argued that law enforcement "failed to provide *any* facts or circumstances from which a magistrate could properly conclude that there was probable cause to seize the broad classes of items being sought." *Id.* at 548. As such, they suggested, "[n]o reasonable officer would have presumed that such a warrant was valid." *Id.* (alteration in original). The Supreme Court forcefully rejected this argument:

> Even if the scope of the warrant were overbroad in authorizing a search for all guns when there was information only about a specific one . . . [and] for evidence of gang membership . . . it would not have been 'entirely unreasonable' for an officer to believe that the . . . the affidavit established a fair probability that such evidence would aid the prosecution of [the target] for the criminal acts at issue.

*Id.* at 548-49, 553. Therefore, the Court held that the officers were entitled to qualified immunity. *Id.* at 556. Based on *Messerschmidt*'s factual similarity with the

present case, we conclude that this precedent compels the same result for Spurlock.[5]

On the record before us, we hold that it was not entirely unreasonable for Spurlock to believe that his affidavit established sufficient probable cause for the search and seizure of the items included in the warrant. First, the district court found, and the Kieslings effectively concede, that the affidavit provided probable cause to seize the deer, based on the anonymous tip and the recorded jailhouse call.[6] Second, we agree with Spurlock's argument that the items described in numbers two through four of the warrant—which include documentation related to the "capture or sale of wildlife" (item two), photographs related to illegally captured wildlife (item three), and indicia of ownership of the first three categories of items to be seized (item four)—were relevant to the criminal offense under investigation, as they directly related to the existence, capture, and maintaining of a pet deer. *Cf. United States v. Timley*, 443 F.3d 615, 623 (8th Cir. 2006) (finding valid a warrant authorizing the

---

[5]The dissent reads *Messerschmidt* to suggest that "the facts in the affidavit must include indicia of probable cause *for each item* in a warrant." *Post* at 13 (emphasis added). While the dissent is correct that *Messerschmidt* seems to indicate that probable cause existed to search for other illegal guns, gang paraphernalia, and photographs or photo albums, it ignores the Court's alternative analysis, where it assumed that probable cause was lacking as to these items but nonetheless concluded that the officers retained qualified immunity as such evidence could "aid [in] the prosecution of . . . the criminal acts at issue." *See* 565 U.S. at 548-53.

[6]The Kieslings do suggest that Spurlock "didn't know for sure whether the deer was illegal or not," based primarily on the AGFC Code's grandfather clause. While the fact that Vollie identified the deer as a "button buck" establishes with near certainty that the deer was born after the grace period's cutoff date of July 1, 2012, such certainty is not required. Rather, to lose the shield of immunity conferred by the warrant, it must have been objectively unreasonable for Spurlock to believe that the affidavit established probable cause that the deer was illegal, *see Messerschmidt*, 565 U.S. at 546-47, and his affidavit plainly meets this low threshold.

seizure of "equipment used to further drug transactions, documents relating to drug transactions . . . and photographs of coconspirators or objects of the conspiracy"). Finally, we agree with the Kieslings that items five and six include somewhat broad, categorical language in identifying digitally stored evidence and several possible instrumentalities of criminal activity, including cash and firearms. However, like the gang paraphernalia, photo albums, and other weapons seized in *Messerschmidt*, there was at least a fair probability that these items would be found and that they would "aid [in] the prosecution of . . . the criminal act[] at issue." *See* 565 U.S. at 552-53; *see also id.* at 552 n.7 ("The Fourth Amendment does not require probable cause to believe evidence will *conclusively* establish a fact before permitting a search, but only probable cause . . . to believe the evidence sought *will aid* in a particular apprehension or conviction." (citation and internal quotation marks omitted)).

The dissent contends that there is "no plausible connection" between the misdemeanor offense of keeping a deer as a pet and the items described in numbers five and six of the warrant. *See post* at 13 n.8, 14-15. As an initial matter, the dissent appears to require actual probable cause and ignores *Messerschmidt*'s more lenient "entirely unreasonable" standard. Regardless, we do not agree that the inclusion of these items rendered Spurlock's reliance on the warrant entirely unreasonable. First, the inclusion of digital storage devices does not defeat immunity because there was a fair probability that officers would find digitally stored pictures of the deer or records of its purchase or the purchase of food, pens, or other related items. At the very least, it would not be entirely unreasonable for Spurlock to reach this conclusion, and *Messerschmidt* explicitly approved of the seizure of evidence that helps establish possession of items related to the crimes specified in a warrant application. 565 U.S. at 552 (explaining that, even if evidence is not directly related to the target offenses, "a reasonable officer could still conclude that [such evidence] would aid in the prosecution of [the suspect] by, for example, demonstrating [his] connection to other evidence found [nearby]").

-10-

As for the evidence of other instrumentalities of criminal activity, we agree with the dissent that the warrant affidavit likely fails to establish probable cause due to its limited focus on AGFC Code § 9.14. However, it would not be "entirely unreasonable" for Spurlock to conclude that suspects keeping a live deer in their home also may be engaging in wildlife trafficking, which would constitute a violation of AGFC Code § 9.07. *See* Ark. Code R. § 002.00.1-09.07 (prohibiting the sale of wildlife without a valid permit). Relying on this inference, a reasonable officer could conclude that money, guns, and other such evidence would be relevant for a future prosecution in the same way that similar instrumentality evidence was justified in *Messerschmidt*. There, the Court suggested that officers would not be entirely unreasonable in concluding that they might find other illegal guns—separate and apart from the pistol-gripped sawed-off shotgun associated with the assault—for the purpose of pursuing potential firearm charges not referred to in the affidavit. *Id.* at 535. Likewise, although Spurlock did not explicitly note any suspicion of wildlife trafficking in his affidavit, he alluded to it by stating that the Kieslings had "ledgers documenting the capture or sale of wildlife," and it was not entirely unreasonable for him to have reached this conclusion. We do not see how this materially differs from *Messerschmidt*'s rationalization for the broad search for firearm evidence—not to mention the inclusion of unrelated gun paraphernalia like the holsters, cleaning kits, and ammunition. Thus, even assuming that the warrant was overbroad as to these final two categories, this was not a case where the issuing judge "so obviously erred that any reasonable officer would have recognized the error." *Id.* at 548-49.

In sum, although we are inclined to think that the affidavit contained sufficient indicia of probable cause to support the seizure of most of the items in the warrant, at a minimum, this is not the rare case where a warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely

-11-

unreasonable." *Id.* at 547 (citation omitted). As such, the district court erred in determining that Spurlock was not entitled to qualified immunity.[7]

Accordingly, the district court's order denying qualified immunity as to Officer Spurlock is reversed.

GRITZNER, District Judge, dissenting.

---

[7]As an alternative basis for affirmance, the Kieslings invoke three other purported exceptions to the general rule immunizing officers who conduct searches and seizures pursuant to a warrant. Even assuming that *Messerschmidt* implicitly adopted these exceptions through its reliance on relevant precedent, none serves to defeat qualified immunity based on the record before us. For the first two exceptions, the Kieslings argue that *Leon* established that officers may be subject to liability despite the existence of a warrant: (1) where a warrant affidavit is based on "knowing or reckless falsity," and (2) where the issuing judge fails to "perform his 'neutral and detached function' and [instead] serve[s] merely as a rubber stamp for the police." 468 U.S. at 914 (citations omitted). Although the Kieslings claim that the affidavit here "was based on false information and omissions," they point only to Spurlock's conclusion that a crime had been committed, arguing once again that he could not be certain that they illegally possessed the deer. This is simply not enough to suggest that Spurlock was untruthful in his affidavit. Likewise, the Kieslings point to no facts suggesting that the issuing judge abandoned his neutrality. Finally, for the third purported exception, the Kieslings rely on *Groh v. Ramirez* for the premise that "a warrant may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid" and thus lose the shield of qualified immunity. 540 U.S. 551, 565 (2004). However, the only defect they identify is the alleged incompatibility between the factual claims in the affidavit and the scope of items to be seized. *Messerschmidt* expressly rejected this interpretation of *Groh*, noting that this precedent was "far afield" because "any defect [related to overbreadth] would not have been obvious from the face of the warrant." 565 U.S. at 555-56. As such, none of these three exceptions provides an alternative basis for affirmance.

Because I hold the view that the warrant was clearly overbroad, and the District Court properly declined to recognize the protection of qualified immunity, I respectfully dissent. I would find the warrant that Spurlock executed was so obviously overbroad in relation to the criminal act at issue that any reasonable officer would have known there was no probable cause for the scope of the warrant. See Malley v. Briggs, 475 U.S. 333, 345 (1986). Put simply, no reasonable officer could conclude that a search and seizure of digital storage devices, firearms, or monies would bear any plausible connection to a misdemeanor regulatory infraction of housing a deer as a pet. As it stands, the majority opinion could potentially permit overbroad, and thus unconstitutional, warrants so long as some portion of the warrant is supported by probable cause, substantially weakening the Fourth Amendment's protections against general searches.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause . . . and particularly describing the . . . things to be seized," U.S. Const. amend. IV. This requirement is necessary to prevent "unauthorized invasions of the sanctity of a man's home and privacies of life." Berger v. New York, 388 U.S. 41, 58 (1967) (citation and internal quotation marks omitted). The Fourth Amendment's particularity requirement commands that an overbroad warrant is not saved if probable cause is lacking for only some, but not all, of the items to be searched. A warrant must be wholly based on probable cause. This is because the Fourth Amendment "limit[s] the authorization to search to the specific areas and *things for which there is probable cause to search*." Maryland v. Garrison, 480 U.S. 79, 84 (1987) (emphasis added); see also Groh v. Ramirez, 540 U.S. 551, 560 (2004) ("[U]nless the particular items described in the affidavit are . . . set forth in the warrant itself . . . , there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, *every item* mentioned in the affidavit." (emphasis added)). In this case, there is no basis to conclude that firearms, monies, or "other instrumentalities . . . of criminal activity" would aid prosecution of

-13-

a crime that consists in the mere possession of a deer as a pet.[8]  Because this much would be obvious to any reasonable police officer, qualified immunity must be denied under Messerschmidt v. Millender, 565 U.S. 535 (2012).

The Supreme Court's decision in Messerschmidt demonstrates that the facts in the affidavit must include indicia of probable cause for each item in a warrant and also diverges substantially from the facts of this case.  As the majority notes, the warrant at issue in Messerschmidt concerned a known gang member who had attempted to murder his estranged girlfriend after she had "call[ed] the cops" on him. Messerschmidt, 565 U.S. at 548 (alteration in original).  In addition to authorizing a search for the weapon used to commit the crime, the warrant authorized a search for *all* firearms as well as for indicia of the suspect's gang membership. Id. at 541-42. The Supreme Court in Messerschmidt, assuming that the inclusion of such items rendered the warrant overbroad, determined that there was arguably probable cause as to those items because, inter alia, the suspect could use other firearms to make a repeat attempt on the woman's life and that there was arguably probable cause as to the indicia of gang membership because, inter alia, the suspect's gang membership could have been relevant to establish a motive for the attempted murder.  Id. at

---

[8]Neither the majority opinion nor the district court's order detail the Arkansas Regulations upon which the affidavit was based and the warrant was issued.  First, as appellant lists, is Code Ark. R. 002.00.1-09.01, which provides that "[i]t is unlawful to possess, hold captive, confine or enclose any live wildlife, whether native or non-native, migratory or imported, unless otherwise specified herein."  The second regulation is Code Ark. R. 002.00.1-09.14, which, with certain exceptions, prohibits keeping a deer as a pet, requires certain housing enclosures for lawfully kept deer, and prohibits keeping such deer in dangerous or unhealthy conditions.  Even a generous reading of those regulations does not support the seizure of the following items enumerated as "(5)" and "(6)" of the warrant: "(5) computers, digital and/or electronic storage devices, and any digital and/or electronic removable media, tending to demonstrate that criminal offenses have been committed (6) and all other instrumentalities including firearms and monies of criminal activity."

-14-

550-51. The ultimate question was whether "the facts set out in the affidavit established a fair probability that such evidence would aid the prosecution of [the suspect] for the criminal acts at issue," which the Supreme Court deemed satisfied for the items listed in the warrant. Id. at 553.

The facts set forth in Spurlock's affidavit and some of the items set forth in the warrant lack a similar logical connection, and the majority opinion does not provide one; nor could that be successfully done on this record.[9] If there is no plausible

---

[9]Because Messerschmidt instructs that facts in the affidavit must provide objectively reasonable grounds to believe there is probable cause, it is necessary to review the link between the affidavit, the nature of the crimes at issue, and the scope of the search. See Messerschmidt, 565 U.S. at 551-53. First, the factual basis of the warrant application in Messerschmidt was provided from an interview with the victim, which, in turn, was recounted in the warrant application and affidavit. Id. at 548-49. These facts disclosed the suspect's prior use of guns and gang affiliation. Id. Here, the warrant application was based upon information that the Kieslings possessed a deer. There was no indication the Kieslings were engaged in criminal activity related to, or beyond, possession of a deer. Second, the detectives in Messerschmidt verified the victim's account of the suspect's related criminal activity and sought the approval of a superior and a deputy district attorney before submitting the warrant application. Id. at 553. There is no indication Spurlock verified the facts in the affidavit or sought approval of the warrant application. Third, the items in the Messerschmidt warrant were anticipated by the warrant application and affidavit. Id. That is not the case, here. Although Spurlock's affidavit asserted probable cause to search for "ledgers documenting the capture or sale of wildlife," this was not a fact set out in the affidavit but was itself an inference of probable cause from the facts. Items five and six of the warrant are not anticipated by facts set out in the affidavit.

Moreover, the majority's rationale that it was not "'entirely unreasonable' for Spurlock to conclude that suspects keeping a live deer in their home also may be engaging in wildlife trafficking," ante, at 10, in my view exceeds the court's role in the qualified immunity analysis. Spurlock did not mention in the application or the affidavit that he had reason to suspect *the Kieslings* were involved in wildlife trafficking. Allowing this inference, the majority fills gaps in this record citing

connection between the crime at issue and items described in the warrant, there is no means of finding arguable probable cause as to those items. See id. (determining "it would not have been 'entirely unreasonable' for an officer to believe that the facts set out in the affidavit established a fair probability that such evidence would aid the prosecution of [the suspect] for the criminal acts at issue") (quoting Malley, 475 U.S. at 341). Contrary to the majority's conclusion, a situation in which there is no reasonable basis to find probable cause as to the warrant's breadth is precisely the situation in which the issuing judge "so obviously erred that any reasonable officer would have recognized the error." Messerschmidt, 565 U.S. at 556.

—————————————————

Messerschmidt's "more lenient" standard. I do not read Messerschmidt as going that far. Indeed, Messerschmidt goes to great lengths to detail the detectives' conduct that supported a finding that their reliance on the warrant was not entirely unreasonable. Messerschmidt was a case driven by factual support in the record, and I conclude it cannot be read to support Spurlock's reliance on the warrant in this case.