# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1449

_____

Kelly Martin

*Plaintiff - Appellee*

v.

Jordan Turner, Individually and in his official capacity

*Defendant - Appellant*

Shawn Stephens, Independence County Sheriff, Individually and in his official capacity; Jacob McLaughlin, Individually and in his official capacity; Independence County, Arkansas; John Doe

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern

_____

Submitted: April 12, 2023
Filed: July 21, 2023

_____

Before COLLOTON, WOLLMAN, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Kelly Martin sued Independence County Sheriff's Deputy Jordan Turner for his alleged deliberate indifference to her seizure condition after she was arrested for driving while intoxicated. Deputy Turner asserted qualified immunity in his motion for summary judgment, which the district court denied. We reverse.

**I.**

In the summer of 2017, Deputy Turner responded to a one-car accident near Batesville, Arkansas. He found a vehicle on the side of the road and its driver, Kelly Martin. Deputy Turner began investigating and asked Martin several questions about the accident. Her confused, at times "incoherent," answers, slurred speech, and general demeanor indicated to Deputy Turner that she was likely impaired by drugs. She told him that she was not hurt and had no medical problems. Turner checked Martin's driver's license (which noted no medical restrictions) and searched her purse and found various pills, including a medication sometimes used to treat seizure disorders. When asked whether she took any medications, Martin responded that she had a "patch," an apparent reference to her pain medication. At this point, Deputy Turner noticed that Martin's demeanor was improving. Emergency medical personnel on the scene observed Martin and told Deputy Turner that Martin had refused further treatment and transport to the hospital.

Deputy Turner then arrested Martin for driving while intoxicated. As he placed Martin in his patrol car, her boyfriend, John Reynolds, arrived. Reynolds claims that he told Deputy Turner that Martin was driving to a hospital because she had run out of her pain medicine and that she "might have had a seizure" at the time of the accident. As it turns out, Martin suffers from an unspecified seizure disorder. Deputy Turner, however, says that Reynolds mentioned nothing about Martin's condition, her medication, or a possible seizure. In the end, Deputy Turner took Martin (along with her medications) to jail, where she was booked by a jail official

and detained until the next day. Martin alleges that she suffered multiple seizures during her detention that caused serious injuries.

Martin sued Deputy Turner (in his official and individual capacities) and others under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, Ark. Code § 16-123-101 *et seq.*, alleging deliberate indifference to her seizure condition, specifically, the seizure she claims to have suffered around the time of her arrest. All defendants moved for summary judgment, and the individual defendants invoked qualified immunity. The district court granted summary judgment to all defendants on all claims except the individual-capacity claims against Deputy Turner. The district court ruled that "[w]hether Deputy Turner was aware of Martin's seizure disorder or medication are disputed material facts that must be decided by a jury" and concluded that Deputy Turner was not entitled to summary judgment based on qualified immunity. Turner appeals.

## II.

We have jurisdiction to review the district court's order denying qualified immunity, which we review *de novo*. *Barton v. Taber*, 908 F.3d 1119, 1123 (8th Cir. 2018) (*Barton II*). In this interlocutory posture, we take as true the facts that the district court assumed, or likely assumed, in its denial of summary judgment. *Johnson v. Jones*, 515 U.S. 304, 318 (1995). "[W]e determine the facts that it likely assumed by viewing the record favorably to the plaintiff as in any other summary judgment motion." *Livers v. Schenck*, 700 F.3d 340, 350 (8th Cir. 2012).

Martin and Deputy Turner agree that, to establish a violation of her rights, she must show that she suffered from an objectively serious medical need and that Deputy Turner had actual knowledge of that need but deliberately disregarded it. *See Barton II*, 908 F.3d at 1124; *Grayson v. Ross*, 253 S.W.3d 428, 433 (Ark. 2007). Because qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" Martin also

must show that it was clearly established that Deputy Turner's conduct violated her rights. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Est. of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018) ("The plaintiffs have the burden of showing that the law was clearly established."). Though a court may address these questions in any order, it may not deny qualified immunity without answering them both in the plaintiff's favor. *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021).

When considering whether a right is clearly established, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "This generally requires a plaintiff to point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer['s] conduct in the specific circumstances at issue." *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021) (internal quotation marks omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition," and we keep in mind that "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted); *see Kisela v. Hughes*, 584 U.S. ---, 138 S. Ct. 1148, 1152 (2018) (per curiam) ("[T]he focus is on whether the officer had fair notice that her conduct was unlawful . . . ."). These principles apply equally to claims under § 1983 and the Arkansas Civil Rights Act. *Hudson v. Norris*, 227 F.3d 1047, 1054 (8th Cir. 2000).

Martin offers five cases that she argues clearly establish a civil-rights violation under circumstances sufficiently similar to those presented here: *Foulks v. Cole County*, 991 F.2d 454 (8th Cir. 1993); *Camberos v. Branstad*, 73 F.3d 174 (8th Cir. 1995); *Coleman v. Rahija*, 114 F.3d 778 (8th Cir. 1997); *Phillips v. Jasper County Jail*, 437 F.3d 791 (8th Cir. 2006); and *Barton v. Taber*, 820 F.3d 958 (8th Cir. 2016) (*Barton I*). Assuming without deciding that decisions of the Eighth Circuit may constitute clearly established law for qualified-immunity purposes, *cf. City of*

*Escondido v. Emmons*, 586 U.S. ---, 139 S. Ct. 500, 503 (2019) (per curiam), Martin's cases do not involve sufficiently similar facts to "squarely govern" Deputy Turner's conduct here, *see Graham*, 5 F.4th at 887.

The first four cases have nothing to do with the conduct of an arresting officer. *Foulks* affirmed the denial of a motion to dismiss a complaint that alleged jailors had ignored an inmate's severe head injury even though the inmate had arrived at the jail from the hospital with instructions for his care. *See* 991 F.2d at 457. *Camberos* is not a qualified-immunity case, involves no discussion of clearly established rights, and merely held that certain prison nurses were not deliberately indifferent to an inmate's shoulder problems because they referred him to a physician assistant numerous times. *See* 73 F.3d at 177. *Coleman* affirmed a district court's conclusion that prison medical staff's unreasonable delay in treating a pregnant inmate's preterm labor constituted deliberate indifference. *See* 114 F.3d at 786. And *Phillips* held that jail staff's "knowing failure to administer prescribed medicine can itself constitute deliberate indifference"—a proposition inapplicable here. *See* 437 F.3d at 796. These cases are therefore inapposite.

*Barton I*, however, did involve a deliberate-indifference claim against an arresting officer. 820 F.3d at 964. After officers arrived at the scene of Barton's single-car accident, all signs pointed to his severe impairment. *Id.* at 962. He nearly fell several times and had a blood-alcohol concentration well over the legal limit. *Id.* As officers arrested and searched Barton, he fell to the ground unresponsive. *Id.* Barton could not stand on his own, so officers lifted him into a patrol car and took him to jail where he later died from a heart condition. *Id.* at 962-63. At no point was Barton evaluated by a medical professional. *Id.* Under these circumstances, we held that a reasonable officer would have understood that failing to seek medical care for a post-car-accident arrestee who exhibited Barton's severe symptoms violates the arrestee's rights. *Id.* at 966-67.

The facts of this case are quite different from *Barton I*. Viewing them in the light most favorable to Martin, we assume, as the district court likely did, that the

conversation with Reynolds made Deputy Turner aware of Martin's seizure disorder and the reason Martin needed her medications. But unlike in *Barton I*, Deputy Turner promptly attended to Martin and asked her whether she was hurt or suffered from medical problems. She said no and did not advise him of her seizure disorder. Emergency medical personnel also observed Martin and were content not to take her to the hospital, advising Deputy Turner that she had refused further treatment. He then took Martin and her medications to jail. *Barton I* did not provide Deputy Turner fair notice that his failure to seek further medical treatment for Martin or to speak with the jailors about what Reynolds told him constituted deliberate indifference. *See Kisela*, 138 S. Ct. at 1152. Thus, Martin failed to show that clearly established law prohibited Deputy Turner's conduct, and Deputy Turner is entitled to qualified immunity.

## III.

For the foregoing reasons, we reverse the district court's denial of Deputy Turner's motion for summary judgment and remand for entry of judgment in his favor.

_____