# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2835

_____

Regina Barton, as personal representative for the Estate of Jeffry Alan Barton

*Plaintiff - Appellee*

v.

Donnie Taber, individually and in his official capacity as the Malvern Chief of Police; Tim Callison, individually and in his official capacity as a Malvern Police Officer

*Defendant*s

Chad Ledbetter, individually as the Hot Spring County Sheriff; George Wright, individually and in his official capacity as Hot Spring County Jail Administrator; Amie Martin, individually and in her official capacity as Hot Spring County Deputy

*Defendants - Appellants*

Brian Keith Orrell, Jr., Administrator of the Estate of Brian Orrell, in his Individual Capacity, also known as Brian Orrell; Zachary Owens, individually and in his official capacity as an Arkansas State Trooper

*Defendant*s

Hot Spring County, Arkansas

*Defendant - Appellant*

City of Malvern, Arkansas; State of Arkansas

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: April 11, 2018
Filed: November 14, 2018

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Regina Barton, as personal representative for the Estate of Jeffry Alan Barton (Barton), filed suit under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-105. She alleged that Hot Spring County Deputy Amie Martin was deliberately indifferent to Barton's serious medical needs and that Hot Spring County Jail Administrator George Wright failed to adequately train or supervise Martin, thereby causing the deprivation of Barton's constitutional rights. Regina Barton further alleged that Hot Spring County did not adequately train its detention facility workers and that its policies failed to ensure that detainees received adequate medical care. We affirm the district court's denial of qualified immunity to Martin, we reverse the denial of qualified immunity to Wright, and we dismiss the County's appeal for lack of jurisdiction.

I. Background

On September 12, 2011, Barton was involved in a single-vehicle accident at an overpass located on U.S. Highway 270. He was placed under arrest after a portable breath test indicated that his blood alcohol concentration was .117. Barton could not

stand without assistance. When he fell to the ground during the search of his person, he briefly was not responsive, and an officer checked to make sure that he still had a pulse. Officers thereafter placed Barton in a patrol car, and Arkansas State Trooper Zachary Owens transported him to the Hot Spring County detention center for booking.[1]

Martin was working at the detention center when Barton arrived at approximately 3:15 p.m. According to Martin, he "appear[e]d to be highly intoxicated, his speech was slurred, [and] he was having trouble standing alone." Trooper Owens led Barton to a room for additional testing to determine his blood alcohol concentration. After numerous attempts, Barton was able to provide only one adequate sample, which indicated a blood alcohol concentration of .115.

Owens thereafter escorted Barton to the booking area where Martin was stationed. Barton sat on a bench as Owens completed paperwork. When asked by Owens to stand beside him, Barton walked over to Owens and held the handrail before collapsing to the ground. Two trustees helped Owens return Barton to the bench, where he remained seated while Owens finished explaining the citation and asked him to sign certain documents. Owens instructed Barton three times where to sign the document, but Barton did not seem to understand the instructions, and he did not sign the document. Owens told Martin that Barton was under the influence of alcohol and hydrocodone.

Martin's arrest-disposition report noted that Barton was under the influence of alcohol and hydrocodone upon his arrival at the detention center, but that he was conscious, breathing normally, and did not appear to be suicidal. Martin wrote that

---

[1]In an earlier appeal, we affirmed the denial of qualified immunity to Owens. See Barton v. Taber, 820 F.3d 958 (8th Cir. 2016) (Barton I). The district court later granted Regina Barton's motion to dismiss Owens from the lawsuit and dismissed the claims against him without prejudice. See D. Ct. Order of Mar. 2, 2017.

Barton was unable to answer any questions about his medical needs or his next of kin. He could not sign his name or provide a phone number of someone she could call for him.

Although she knew that Barton had been involved in a car accident immediately before his arrest and that he was heavily intoxicated, Martin did not conduct the healthcare screening that the detention center's policy requires. She decided to accept Barton into the detention center, placed him in a holding cell, and allowed Trooper Owens to leave. Martin herself left the detention center at approximately 4:50 p.m.

During the night, a trustee reported to a jailer that Barton did not seem to be doing well and that his condition was not improving. Barton died in his cell sometime that night. His body was found at 12:03 a.m. on September 13, 2011. An autopsy determined that the cause of death was a heart condition—anomalous right coronary artery, fatty infiltration of right ventricle and atrium of heart. Small amounts of ethanol and hydrocodone and a non-toxic level of anti-anxiety medication were found in Barton's system.

Wright was serving as the jail administrator when Barton was detained. Although he had no contact with Barton, Wright was responsible for ensuring that the detention center's personnel were adequately trained and were implementing the County's policies, which Wright admitted he did not fully understand. Those policies instructed booking officers to conduct a healthcare screening of an arrestee before releasing the arresting officer; to refer an intoxicated arrestee to detoxification, or in the alternative, to seek medical clearance before admitting the individual into the detention center; to keep intoxicated arrestees under close observation; and to refuse arrestees who appear to be in a medical emergency.

The district court denied, in relevant part, the defendants' motion for summary judgment. It concluded that neither Martin nor Wright was entitled to qualified immunity on the § 1983 claims or summary judgment on the state-law claim. With respect to the County, the district court determined that there was a question of fact whether the "County had a custom of remaining deliberately indifferent to the objectively serious medical needs of its detainees, or of failing to train or supervise its Detention Facility staff." D. Ct. Order of Aug. 3, 2017, at 9.

## II. Qualified Immunity

We have jurisdiction over the interlocutory appeal from the denial of qualified immunity under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Our jurisdiction is limited, however, to "abstract issues of law" and does not extend to the "determination that the evidence is sufficient to permit a particular finding of fact after trial." Johnson v. Jones, 515 U.S. 304, 314, 317 (1995). On appeal from the denial of summary judgment based on qualified immunity, we accept as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed, to the extent they are not "blatantly contradicted by the record." Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). We review de novo the issues of law. Id.

At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009); see Pearson v. Callahan, 555 U.S. 223, 231-32 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

## A. Amie Martin

Regina Barton claims that Martin's failure to seek medical care for Barton constituted deliberate indifference to Barton's serious medical needs, in violation of his right to due process. See Barton I, 820 F.3d at 964 (applying the Eighth Amendment deliberate-indifference standard to Regina Barton's claim against Owens); Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014) (applying the Eighth Amendment deliberate-indifference standard to a pretrial detainee's claim of failure to provide medical care in violation of the due process clause of the Fourteenth Amendment); Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012) (explaining that "any distinction between a 'pretrial detainee' and an 'arrestee' does not affect the analysis").

To establish a constitutional violation based on deliberate indifference, Regina Barton must show that Barton suffered from an objectively serious medical need and that Martin had actual knowledge of that need but deliberately disregarded it. See Barton I, 820 F.3d at 964-65; see also Thompson v. King, 730 F.3d 742, 746 (8th Cir. 2013) ("A plaintiff claiming deliberate indifference must establish objective and subjective components."); Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011) ("Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact."). A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Barton I, 820 F.3d at 964 (quoting Jackson, 756 F.3d at 1065). "[T]o demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the [arrestee's] health." Thompson, 730 F.3d at 746-47 (quoting Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009)).

Martin argues that she is entitled to qualified immunity because Barton presented symptoms of mere intoxication, and not those of an objectively serious medical need. We disagree. As recounted above, Barton had been in a car accident. He could not follow simple instructions or answer basic questions; he was unable to stand without assistance and fell during the booking procedure. Although Barton had a .115 blood alcohol concentration, he reportedly was so heavily intoxicated that Wright could not recall whether he had "ever r[u]n into somebody that was in [Barton's] particular shape," and he "d[id]n't know that any of [his] officers had either." In light of the evidence of Barton's recent car accident, his severe intoxication, and his drug ingestion, we conclude that a jury could find that Barton was experiencing a medical need so obvious that a layperson would recognize that he needed prompt medical attention.

We reject Martin's contention that Barton presented symptoms similar to the detainee in Grayson v. Ross, a case in which we reversed the district court's denial of qualified immunity to the booking officer. 454 F.3d 802 (8th Cir. 2006). The detainee in Grayson was under the influence of methamphetamine, but he sat calmly and answered questions during booking, causing the booking officer to remark that "the jail had booked detainees in worse condition." Id. at 807. The officer thereafter accompanied the detainee to a dressing room, where the detainee complied with instructions to change into a prison uniform. We concluded that "[c]onfronted with a calm, non-combative person sitting on a bench answering questions, a layperson would not leap to the conclusion that Grayson needed medical attention, even if he were aware that Grayson had taken methamphetamine." Id. at 810. In contrast to the situation in Grayson, Martin was confronted with a confused, noticeably intoxicated person who was unable to stand and who could not answer simple questions, including those about his medical needs. The facts here are more analogous to Thompson v. King, in which we affirmed the denial of qualified immunity to the booking officer who was presented with a detainee "who passed out in the booking

area, nearly fell out of his seat, was unable to sign his name, and . . . 'couldn't even answer questions that [the booking officer] was asking him.'" 730 F.3d at 749.

Martin next argues that the evidence is insufficient to support a finding that she knew that Barton needed medical care and nonetheless disregarded his serious medical need. Viewing the facts in the light most favorable to Barton, a jury could infer Martin's knowledge by Barton's evident need for prompt medical attention and Martin's obviously inadequate response to that need. See Barton I, 820 F.3d at 965 (explaining that a defendant's mental state can be inferred from evidence "that demonstrate[s] that a medical need was obvious and that the [official's] response was 'obviously inadequate'" (quoting Thompson, 730 F.3d at 747)). Martin saw Barton collapse and observed that he did not understand Owens's instructions. Despite knowing that Barton had been in a car accident, that he had symptoms of severe intoxication, and that he could not answer her questions about his medical needs, Martin did not conduct the healthcare screening that the County's policies require and which would have revealed significant bruising on Barton's back and legs. A jury also could consider evidence that Martin did not follow the County's policies when she decided to accept the obviously intoxicated Barton into the detention center without medical approval and without attempting to refer him to the detoxification unit. The circumstances presented to Martin thus are distinguishable from those presented to the booking officer in Grayson, because the detainee there had no obvious injuries and his "behavior at the time of the intake did not suggest a high degree of intoxication." 454 F.3d at 810.

We also reject Martin's contention that it was not clearly established on September 12, 2011, that booking Barton into jail would constitute deliberate indifference to Barton's serious medical needs. We have held that "a reasonable officer in 2011 would have recognized that failing to seek medical care for an intoxicated arrestee who exhibits symptoms substantially more severe than ordinary intoxication violates the arrestee's constitutional rights, all the more so when the

surrounding circumstances indicate that a medical emergency exists." <u>Barton I</u>, 820 F.3d at 967 (citing <u>Thompson</u>, 730 F.3d at 747-49).

## B. George Wright

Regina Barton claims that Wright failed to adequately train or supervise Martin, thereby causing the deprivation of Barton's right to due process. A supervisor may be held liable if the "failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." <u>Tlamka v. Serrell</u>, 244 F.3d 628, 635 (8th Cir. 2001) (quoting <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1078 (8th Cir. 1996)). The plaintiff must show that the supervisor was "deliberately indifferent to or tacitly authorized the offending acts," which requires evidence that "the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." <u>Id.</u> (quoting <u>Andrews</u>, 98 F.3d at 1078).

The record is devoid of any evidence establishing that Wright knew that Martin was inadequately trained or supervised. Regina Barton's brief asserts that "Martin has been involved in several lawsuits, the majority of which involve allegations of denial of medical care," but she cited no evidence to support that assertion. Appellee's Br. 39. While Martin testified that she had been sued by four plaintiffs, there is no indication that the claims against her involved the denial of medical care. Moreover, there is no evidence regarding the nature of Martin's alleged acts or omissions, when those acts or omissions occurred, or when the plaintiffs filed suit. In the absence of such evidence, the mere assertion of prior suits does not support an inference that Wright had notice on September 12, 2011, that the County's training procedures and supervision were inadequate and likely to result in constitutional violations.

### III.  Arkansas Civil Rights Act

Martin and Wright argue that they are entitled to summary judgment on the state-law claim.  Arkansas has adopted the federal deliberate-indifference standard as that which is to be applied to claims brought by pretrial detainees under the Arkansas Civil Rights Act.  Grayson v. Ross, 253 S.W.3d 428, 433 (Ark. 2007).  Accordingly, for the same reasons set forth above, Wright is entitled to summary judgment and Martin is not.

### Conclusion

We affirm the denial of qualified immunity as to Martin.  We reverse the denial of qualified immunity as to Wright.  Because our resolution of the qualified immunity issues does not necessarily resolve the question whether the County maintained an unconstitutional custom, we do not have pendent appellate jurisdiction over the County's appeal.  See Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1012 (8th Cir. 2003) (en banc).  The County's appeal is dismissed.

_____