# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 17-3079

———————————————

Mark T. Morris,

*Plaintiff - Appellant,*

v.

Sheriff Kelley Cradduck; Nurse Darla Watson; Sheriff Shawn Holloway[1]

*Defendants - Appellees,*

Siloam Springs Hospital,

*Defendant.*

————————

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

————————

Submitted: September 25, 2019
Filed: March 30, 2020

————————

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.

————————

---

[1]On Morris's claims against Sheriff Cradduck in his official capacity, Sheriff Holloway as the current officeholder is automatically substituted as the defendant under Federal Rule of Appellate Procedure 43(c)(2).

COLLOTON, Circuit Judge.

Mark Morris, a former detainee at the Benton County Detention Center in Arkansas, sued Sheriff Kelley Cradduck and Nurse Darla Watson, in their individual and official capacities. Morris alleged that Cradduck and Watson, through their individual actions and customs or policies of the county, delayed his access to adequate medical treatment for a serious condition while he was detained. The district court[2] granted summary judgment in favor of Cradduck and Watson, and Morris appeals. We conclude that there is insufficient evidence to support a submissible case and therefore affirm.[3]

I.

Morris was booked into the jail on April 8, 2013, and remained there as a detainee until February 13, 2014. He was then convicted on a criminal charge, and he stayed at the jail until the State transferred him to a correctional facility on May 20, 2014. At the time of his arrest, Morris complained of pain and swelling in his testicles, and jailers took him to a local hospital. A physician diagnosed Morris with a cyst or tumor, gave him Ibuprofen, and released him back into custody.

---

[2]The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas, adopting the report and recommendation of the Honorable Erin L. Wiedemann, United States Magistrate Judge for the Western District of Arkansas.

[3]After the case was submitted, counsel for the appellees filed a suggestion of death and notified the court that Cradduck died on January 5, 2020. *See* Fed. R. App. P. 43(a)(1). Morris moved for a delay during which he could investigate who should be substituted as a party. The court elects to proceed to the merits of the appeal, and the motion is denied. *See Schoelch v. Mitchell*, 625 F.3d 1041, 1043 n.2 (8th Cir. 2010).

Morris continued to complain of pain during April, and he was treated by a physician at the jail, Dr. Lafferty. Dr. Lafferty conducted two urinalyses, ordered an ultrasound, and prescribed an antibiotic and more Ibuprofen. On May 1, 2013, the jail referred Morris to an outside urologist, Dr. Hewett.

On May 2, 2013, Dr. Hewett diagnosed Morris with epididymitis (inflammation of a tube at the back of the testicle) and prescribed an antibiotic and pain medication. Over the next two months, Dr. Hewett saw Morris twice, continued him on the same medications, and prescribed bed rest as needed. During this period, Morris submitted several medical requests to jail staff. After a request on May 14, Dr. Lafferty saw him and prescribed pain medication. In response to five requests in late June and early July, Watson told Morris that an appointment would be arranged. Morris then saw Dr. Hewett on July 10, and the doctor again prescribed antibiotics and pain medicine.

On August 7, 2013, Dr. Hewett saw Morris, noted no significant improvement, and recommended surgery to remove the inflamed tube. Dr. Hewett's notes called for scheduling surgery in one or two weeks, and prescribed complete bed rest until the surgery. According to Watson, she then placed at least fifteen calls to Dr. Hewett's office to schedule the surgery, but was unable to fix a date and eventually did not receive return calls.

On August 26, 2013, Dr. Hewett's office expressed concern about receiving payment from the county for the surgery. That same day, in response to a medical request from Morris, Watson informed him that the delay in surgery was related to payment issues. Watson discussed the payment issue with Captain Guyll of the Sheriff's Office. Guyll signed a letter stating that the sheriff's office would guarantee payment, and Watson sent the letter to Dr. Hewett's office by facsimile machine.

Throughout September 2013, Watson responded to Morris's inquiries by saying that she was trying to schedule the surgery with Dr. Hewett's office. Watson

had an ongoing conversation with Dr. Lafferty about the problems with scheduling surgery, and he directed Watson to keep trying with Dr. Hewett. During this period, Morris reported cold sweats, blood in his urine, and pain and swelling in his testicles. From July to September, Morris submitted grievances about his medical care that were addressed to Cradduck, and he also mailed letters to Cradduck detailing his complaints.

After Watson sent Dr. Hewett the letter guaranteeing payment, but still could not get Dr. Hewett's office to schedule the surgery, she decided to arrange a regular appointment for Morris with the hope that the surgery could be scheduled in person. On October 7, 2013, however, Dr. Hewett canceled the appointment and said he would not treat Morris any further. Once Dr. Hewett refused to perform the surgery, Watson contacted the only other urologist in the area, Dr. Zimmerman. Dr. Zimmerman saw Morris on October 18 and performed the surgery on October 31.

Morris continued to experience pain in his left testicle after the surgery, and he eventually underwent a second surgery to remove that testicle. The physician who performed the second surgery concluded that it was necessary due to "chronic testicular pain." He opined, however, that the delay in Morris receiving the first surgery did not have any detrimental effect and was not the reason why Morris needed a second surgery.

Morris later filed this action under 42 U.S.C. § 1983, alleging that Cradduck and Watson were deliberately indifferent to his medical needs and violated his rights as a pretrial detainee under the Due Process Clause of the Fourteenth Amendment. He also alleged that the county should be liable for an unconstitutional policy or custom of disregarding medical grievances from detainees who exhibited behavior problems. After an evidentiary hearing, the district court granted summary judgment in favor of Cradduck and Watson. The court concluded that both defendants were

entitled to qualified immunity in their individual capacities, and that Morris failed to present sufficient evidence of an unconstitutional policy or custom.

We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Morris. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.

Morris asserts that the district court erred in granting judgment for Cradduck and Watson because they acted with deliberate indifference to his serious medical need. Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983 for violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). As a pretrial detainee, Morris had the same right under the Due Process Clause. *Barton v. Taber*, 908 F.3d 1119, 1123-24 (8th Cir. 2018). To establish a constitutional violation, a detainee must demonstrate an objectively serious medical need that the defendant knew about and deliberately disregarded. *Id*. at 1124. A principal fighting issue in this case is whether Morris has presented sufficient evidence to show that either defendant was deliberately indifferent to Morris's serious medical need for surgery during August, September, and October 2013.

Morris alleges that Watson was deliberately indifferent because she delayed scheduling his surgery for a non-medical reason—namely, her concern about the budget of the sheriff's office. As a result, Morris asserts, he experienced prolonged pain. Delaying access to prescribed medical care for non-medical reasons may constitute deliberate indifference in certain circumstances. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).

Morris failed to produce sufficient evidence to support his theory of deliberate indifference. Watson averred that the delay was caused by Dr. Hewett's office, not by any budgetary concern of hers. Watson explained that she placed at least fifteen phone calls to Dr. Hewett's office between August 7 and October 7 to schedule Morris's surgery, but many of those calls went unreturned, and the physician's office would not schedule a surgical appointment.

When Dr. Hewett's office expressed concern about payment in late August, Watson arranged for Captain Guyll to sign a letter guaranteeing payment for the surgery, and she faxed the letter to Dr. Hewett's office. With surgery delayed, Watson continued to administer pain medication to Morris. When Dr. Hewett's office still refused to schedule surgery, Watson scheduled a regular appointment with Morris to force the issue. When Dr. Hewett canceled the appointment and refused to continue Morris as a patient, Watson promptly arranged for Morris to see Dr. Zimmerman and quickly arranged surgery with him.

Watson's actions demonstrate concern for Morris's condition and show repeated efforts to make arrangements for surgery. Even if Watson could be second-guessed for not acting more aggressively when Dr. Hewett's office delayed, her handling of the situation was at most negligent and does not amount to deliberate indifference that violates the Due Process Clause.

Morris argues that there are factual disputes about whether Watson really did what she says. He relies on the absence of records showing Watson's calls to Dr. Hewett's office and the fact that Captain Guyll's letter about payment is not in Morris's medical file at the jail. The absence of these records does not create a genuine issue of material fact. There is no evidence that Watson had a duty to document the phone calls or to place the payment letter in a medical file. She explained that it was not her ordinary practice to log scheduling calls in a medical chart, and that a payment letter typically would not be included in a detainee's

medical record. Morris produced no evidence to the contrary. That Dr. Hewett's office had no record of the calls or the letter does not undermine Watson's account. His office produced no records *at all* regarding Morris, despite the undisputed fact that he treated Morris on six occasions.

Morris also argues that deliberate indifference by Watson may be inferred from her prior performance. Sheriff Cradduck testified that he twice had directed Watson's supervisor to counsel her about decisions that should have been handled differently, "because it's not her job to worry about the budget." Prior occurrences, however, are insufficient to show that Watson was deliberately indifferent to Morris's medical needs on this occasion. The particular facts of this case do not support a claim against Watson under the Due Process Clause.

Morris claims that Cradduck is liable in his individual capacity as Watson's supervisor because he shielded himself from complaints by detainees who were impacted by Watson's decisions. To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Given that Morris has not presented sufficient evidence that Watson was deliberately indifferent to his serious medical needs, it follows that Cradduck did not violate Morris's rights by supposedly turning a blind eye to his complaints about Watson. Likewise, Morris's claims against the defendants in their official capacities, which are treated as claims against the municipality, fail for lack of a constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005).

*       *       *

The judgment of the district court is affirmed.

_____