# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1606

_____

Jaymes Anthony Stark

*Plaintiff - Appellee*

v.

Lee County, IA; State of Iowa

*Defendants*

Steve Sproul

*Defendant - Appellant*

Jeremy Hamelton; Zachary Coppage; Dustin Young; C.J. Wray

*Defendants*

------------------------------

National Association for Public Defense; Rights Behind Bars

*Amici on Behalf of Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: January 12, 2021
Filed: April 7, 2021

_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Lee County, Iowa, Deputy Sheriff Steve Sproul appeals from the district court's denial of his qualified immunity-based motion for summary judgment. We reverse and remand.

Sproul transported Jaymes Stark from a medical appointment to the Lee County Correctional Center on June 29, 2016.[1] Stark sat in the backseat of Sproul's cruiser, restrained by leg shackles, a belly chain, and handcuffs but not by a seatbelt. While Sproul and Stark were en route, the city police dispatcher advised that an armed robbery was in progress at a nearby bank. Sproul drove to the bank with the intent of observing the crime in progress. Upon arriving, Sproul saw the robbery suspect flee on foot through a vacant lot. Sproul drove his cruiser at approximately 20 to 25 miles per hour through the lot to follow the fleeing suspect. During the pursuit, the suspect turned around and fired a handgun, striking the cruiser. In response, Sproul

_____

[1]The parties clarified at oral argument that Stark was both a federal inmate and a state pretrial detainee at the time of the incident. The parties agree that we should analyze Stark's claim under the Eighth Amendment because of his inmate status. See Putman v. Gerloff, 639 F.2d 415, 418–19 (8th Cir. 1981).

-2-

turned sharply to the right and drove away from the scene. Stark remained in the backseat throughout these events. Stark's shackles prevented him from bracing his body, which, when combined with his lack of seatbelt restraint, caused him to be "thrown around" as Sproul drove over ruts and depressions in the unmaintained lot. Stark immediately thereafter began to experience lower back and neck pain. Stark filed suit under 42 U.S.C. § 1983, alleging that Sproul had failed to safeguard his health and safety and had thereby inflicted injuries upon him. Stark claimed that Sproul thus subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

We review *de novo* the district court's denial of a motion for summary judgment based on a claim of qualified immunity. Barton v. Taber, 908 F.3d 1119, 1123 (8th Cir. 2018). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" Id. (quoting Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)).

Stark argues that Sproul was deliberately indifferent to his health and safety. "The standard applicable when determining whether prison officials unnecessarily and wantonly have inflicted pain, and thus have violated the Eighth Amendment, varies with the type of violation alleged." Howard v. Barnett, 21 F.3d 868, 871 (8th Cir. 1994). We apply the deliberate indifference standard in those situations in which "the State's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities." Whitley v. Albers, 475 U.S. 312, 320 (1986); see also Ambrose v. Young, 474 F.3d 1070, 1076 (8th Cir. 2007) (applying deliberate indifference standard to officials who were "responsible for inmate safety during work assignments" because the officials were "not confronted with competing obligations or exigent circumstances").

When competing institutional concerns or obligations are present, however, the "deliberate indifference standard does not adequately capture the importance of such competing obligations[] or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320. Sproul thus contends that Stark's claim should instead be analyzed as an excessive force claim under the intent to harm standard, which is appropriate in contexts in which "a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff . . . ." Id. at 320–21 (internal citation omitted). Because we conclude that Sproul is entitled to qualified immunity under the deliberate indifference standard, we need not make a definitive ruling on which standard should apply. See Bailey v. Feltmann, 810 F.3d 589, 593 (8th Cir. 2016) ("We think it prudent to avoid addressing the proper constitutional standard unnecessarily.").

Stark argues that Sproul acted with deliberate indifference because there was a substantial risk of harm, the existence of which Sproul knew and disregarded when he engaged in a chase through an unmaintained field with the shackled-but-not-seat-belted Stark in the backseat. See Brown v. Fortner, 518 F.3d 552, 558–59 (8th Cir. 2008) (setting forth deliberate indifference elements). We disagree because Stark has not shown that Sproul knew of or disregarded the unmaintained condition of the rut-filled lot when he chose to follow the fleeing suspect. There is likewise no evidence that Sproul either knew of or disregarded a substantial risk that during the "really quick chase" the suspect would shoot into the patrol car and strike the windshield, radiator, and driver's side door, that Sproul would need to turn sharply to avoid gunfire, and that Stark would thereby be injured. Contra id. at 556, 559–60 (officer was deliberately indifferent to inmate's safety when, during non-exigent circumstances, he drove up to 20 miles per hour in excess of the speed limit, slammed on brakes, swerved, tailgated and improperly passed other vehicles, and crossed double-yellow lines while prisoner was fully shackled but not seat-belted). Stark

-4-

does not assert that, standing alone, Sproul's original decision to drive to the robbery scene for observational purposes while transporting the unbuckled Stark presented a substantial risk of harm.  See Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 906 (8th Cir. 1999) (transporting individuals in patrol wagons without seatbelts did not obviously present a substantial risk of serious harm); Jabbar v. Fischer, 683 F.3d 54, 58 (2d Cir. 2012) (per curiam) ("While seatbelts may offer reasonable safety for the general public, on a prison bus their presence could present safety and security concerns.  Inmates, even handcuffed or otherwise restrained, could use seatbelts as weapons to harm officers, other passengers, or themselves." (cleaned up)).  We cannot say on these facts that Sproul's actions in this quickly evolving emergency situation were anything more than negligent and thus were clearly insufficient to constitute deliberate indifference.  See Barton, 908 F.3d at 1123 ("On appeal from the denial of summary judgment based on qualified immunity, we accept as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed . . . ."); Brown, 518 F.3d at 558 ("Deliberate indifference requires 'more than mere negligence' . . . ." (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994))).

In the absence of a showing that Sproul acted with deliberate indifference, Stark has not established the existence of an Eighth Amendment violation.[2]  We therefore reverse the order denying the motion for qualified immunity and remand the case to the district court for the entry of an appropriate order.

—————————————————————

[2]The record is likewise devoid of any evidence establishing that Sproul intended to harm Stark by applying force "maliciously and sadistically for the very purpose of causing harm" and not "in a good faith effort to maintain or restore discipline."  Whitley, 475 U.S. at 320–21 (internal citation omitted) (setting forth intent to harm standard).