# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1954

_____

Michael D. Hancock

*Plaintiff - Appellant*

Courtney Blade; Anthony Porter

*Plaintiff*s

v.

Jim Arnott, Sheriff; Denney, Major; Johnson, Captain; Jeff Coonrod, Captain;
Howell, Captain; Jason Wilkins, Dr.; Eric Partenheimer, Nurse

*Defendants - Appellees*

Massie, Nurse

*Defendant*

Advanced Correctional Healthcare, Inc.; Greene County Sheriff's Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: January 13, 2022
Filed: June 30, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Michael Hancock was diagnosed with a reducible ventral hernia while detained awaiting trial at the Greene County Justice Center in Missouri. Although his hernia could be repaired through surgery, Hancock was unable to prepay the fee required by the outside surgeon and thus the hernia was not repaired during his detention.

Hancock filed suit under 42 U.S.C. § 1983 against the Greene County Sheriff's Department and its contract healthcare service provider, Advanced Correctional Healthcare, Inc. (ACH), as well as several individuals employed by those entities (collectively, jail officials). Hancock claimed that the jail officials were deliberately indifferent to his serious medical need. The district court[1] granted summary judgment in favor of the defendants. We affirm.

## I. Background

Dr. Jason Wilkins, the jail's physician through ACH, diagnosed Hancock with a reducible hernia in November 2017. A reducible hernia is a hole in the abdominal wall through which intestines and tissue can pass freely. A hernia becomes non-reducible when the tissue becomes trapped, at which point it can become strangulated and lose blood supply. Any hernia can potentially become an emergency.

Dr. Wilkins determined that Hancock's reducible hernia did not require immediate surgery and told Hancock at the time of diagnosis that the surgery was

---

[1]The Honorable Douglas Harpool, United States District Judge for the Western District of Missouri.

-2-

considered "an elective procedure [that] may be delayed until release." An outside surgeon also evaluated Hancock in December 2017 and described his condition as a "[s]mall, easily reducible ventral hernia," noting that Hancock could "be scheduled for elective repair." Hancock was "instructed to present immediately" if the hernia became non-reducible or his symptoms worsened.

A nurse at the jail told Hancock in January 2018 that he would have to make a $3,500 down payment before she could schedule hernia repair surgery with the outside surgeon and that the total cost would be $18,000. Hancock objected, stating that he did not have to pay for it. Hancock reported to the nurse in February 2018 that the hernia had grown in size and that the pain had worsened. The nurse noted that Hancock did not appear to be in acute pain and decided to continue to observe him. Dr. Wilkins did not recommend any additional treatment at that time. When Dr. Wilkins saw Hancock in April 2018, he determined that Hancock's hernia was "non-emergent" and noted that Hancock's outside surgeon did "not recommend emergent intervention." Hancock stated that the jail had to pay for his surgery because he had no ability to pay, but Dr. Wilkins explained again that Hancock was responsible for that payment.

After filing the instant suit, Hancock moved to enjoin the jail officials from enforcing a policy that requires prepayment for necessary medical treatment, including his hernia surgery. In support of his motion, he pointed to the justice center's rule book, which states: "While incarcerated in the Greene County Jail, your medical care will be under the direction of the Jail's Physician. If you require care outside of the facility, you must assume responsibility for payment of that care." At an evidentiary hearing, Dr. Wilkins testified that, if inmates cannot pay for treatment but have "conditions that required something to be done emergently to maintain their health or life," the inmates will receive outside medical care without having to prepay. If, however, inmates seek care for non-emergent, non-urgent serious medical needs and the outside provider requires prepayment, the inmates must pay before

outside medical care is provided.  Dr. Wilkins further testified that Hancock's hernia required surgery to be resolved.  Hancock testified that he did not receive any treatment for his hernia at the Greene County jail.

The district court granted a preliminary injunction against the jail officials.  It ordered that the "treatment of a serious medical need . . . be provided without requiring an inmate to pre-pay for the treatment."  D. Ct. Order of Apr. 2, 2019, at 9. The court specifically found that Hancock's hernia was a serious medical need and required that, "to the extent Hancock remain[ed] in the custody of Greene County," the jail officials "provide medical treatment for [Hancock's] hernia without requiring pre-payment for the same."  Id.  Hancock had been transferred to the state Department of Corrections prior to this order.  D. Ct. Order of Mar. 30, 2021, at 2.  Prison records indicate that following his transfer, Hancock did not disclose his hernia as a problem needing immediate medical attention or about which staff needed to know.  When prison medical staff assessed the hernia in July 2019, they determined that surgery was not medically necessary.  In June 2020 (fifteen months after Hancock had transferred from Greene County jail), Hancock received hernia repair surgery following significant worsening of his symptoms.

The jail officials subsequently moved for summary judgment.  In support of their motions, they included an expert's report and deposition.  The expert explained that as long as a hernia is reducible, surgery may be delayed, whether for medical reasons or the patient's preference.  The expert also reviewed Hancock's medical records and reported that Hancock received care for other medical needs and made only intermittent complaints regarding his hernia and related pain during his twenty-two-month detention at the Greene County jail.  The district court granted the jail officials' motions for summary judgment, concluding that although Hancock had had a serious medical need, he could not establish that the jail officials had been deliberately indifferent to it.  D. Ct. Order of Mar. 30, 2021, at 23, 27.

## II. Analysis

We review *de novo* the district court's grant of summary judgment, viewing the facts in the light most favorable to the non-moving party. Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Deliberate indifference to the serious medical needs of pretrial detainees violates the right to due process. Barton v. Taber, 908 F.3d 1119, 1123 (8th Cir. 2018); see also Jackson, 756 F.3d at 1065 (applying the Eighth Amendment deliberate-indifference standard for inmates' claims to pretrial detainee's claim under the Fourteenth Amendment). To establish deliberate indifference, Hancock must show (1) that he suffered from an objectively serious medical need and (2) that the jail officials had actual knowledge of that need but deliberately disregarded it. See Barton, 908 F.3d at 1124. "Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact." Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011).

### A. Objectively Serious Medical Need

A medical need is objectively serious "if the medical need in question is supported by medical evidence, such as a physician's diagnosis, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Ryan v. Armstrong, 850 F.3d 419, 425 (8th Cir. 2017) (internal quotation marks and citation omitted). Our precedent requires that the effect of a delay in treatment be considered when evaluating the existence of an objectively serious medical need. See, e.g., Redmond v. Kosinski, 999 F.3d 1116, 1120–21 (8th Cir. 2021); Jackson v. Riebold, 815 F.3d 1114, 1119–20 (8th Cir. 2016); Coleman v. Rahija, 114 F.3d 778, 784–85 (8th Cir. 1997). A pretrial detainee "must place verifying medical evidence

in the record to establish the detrimental effect of delay in medical treatment." Riebold, 815 F.3d at 1119–20 (internal quotation marks and citation omitted).

The district court concluded that Hancock had an objectively serious medical need because Dr. Wilkins testified that his hernia required treatment. D. Ct. Order of Apr. 2, 2019, at 6; see also Barton, 908 F.3d at 1124 (a medical need is objectively serious if a physician has diagnosed that it requires treatment). That determination was neither final nor based on a complete record, however. To avoid summary judgment, Hancock was required to present evidence to support the serious medical need he had pleaded. He did not do so.

Dr. Wilkins testified that Hancock would have been provided surgery if his hernia had become non-reducible.[2] Hancock did not present evidence disputing Dr. Wilkins's testimony and, thus, we conclude that the jail officials delayed Hancock's hernia surgery; they did not deny it. Hancock submitted no medical or expert evidence that any delay in his hernia repair surgery created any excessive risk or harm. Hancock argues that his own claims of pain and suffering constitute the verifying medical evidence needed to show harm from the delay. Without corroborating evidence of symptoms, however, self-reported assertions of pain are insufficient to survive summary judgment. See Holden v. Hirner, 663 F.3d 336, 342–43 (8th Cir. 2011) (concluding tooth pain did not constitute a serious medical need when a nurse did not observe visible symptoms, the inmate was observed eating

---

[2]Dr. Wilkins testified that it was the outside provider's prepayment requirement that prevented Hancock's surgery from being scheduled; he implies that he therefore is not responsible for Hancock's inability to receive the surgery. The surgeon's prepayment requirement "does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners. . . . It is no excuse for appellees to urge that the responsibility for delay in surgery rests with" the outside surgeon. See Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989). Were Hancock's hernia repair surgery medically necessary, Greene County would have been required to provide it, even if the surgeon required prepayment.

without difficulty, and the inmate offered no evidence that a delay in treatment affected his prognosis). We thus conclude that Hancock did not establish a detrimental effect of the delay in treatment, which means that he has not established a serious medical need.

The jail officials presented evidence that surgery to repair Hancock's reducible hernia was not required while he was in custody at the detention center. Dr. Wilkins testified that Hancock was not "at risk of any imminent harm, any imminent risk to [his] health, [or] imminent risk to [his] well-being" if he did not obtain immediate treatment for his hernia. Furthermore, the outside surgeon did not indicate any time frame in which the surgery needed to take place. Expert witnesses agreed that surgery was not medically necessary during Hancock's detention at Greene County jail. Medical staff never observed changes to Hancock's vitals or other objective indications of severe pain, and he was observed engaging in physical activity without difficulty. Although Dr. Wilkins testified that Hancock's condition needed treatment, he did not address what that treatment should be or on what time line it should be provided. He also testified that no hernia can be eliminated without surgery, but there is nothing in the record that establishes that all hernias require immediate surgery, regardless of the severity of the risk or symptoms. Because Hancock has not presented any evidence that the delay caused him harm or changed his prognosis, we conclude that Hancock has not shown a serious medical need requiring immediate surgery. Compare Johnson v. Lockhart, 941 F.2d 705, 706–07 (8th Cir. 1991) (concluding that, when prison physician classified hernia repair surgery as priority one and recommended it be performed within a few days because of severity of condition but surgery was delayed ten months, it was "indisputable that the persistent delay in priority one surgery inflicts the sort of 'pain and suffering which no one suggests would serve any penological purpose.'" (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)); and Bowers, 884 F.2d at 1056 (suggesting deliberate indifference existed when outside provider repeatedly recommended surgery, without which the inmate would become permanently disabled, and surgery had been delayed

nine years); with Buckley v. Corr. Med. Servs., Inc., 125 F. App'x 98, 99 (8th Cir. 2005) (per curiam) (concluding prison healthcare contractor was not deliberately indifferent because 20-month delay in surgery was not due to a corporate policy or action and "although [plaintiff] testified that he experienced some pain, he did not counter the testimony of two [jail] physicians that the surgery was elective and not a medical emergency, and he admitted that no one had told him the delay was detrimental"); and Sherrer v. Stephens, 50 F.3d 496, 496–97 (8th Cir. 1994) (per curiam) (concluding allegations did not rise to level of deliberate indifference in treating broken index finger when there was insufficient evidence that officials "ignored an acute or escalating situation or that the delays adversely affected [inmate's] prognosis, given the type of injury" (internal quotation marks and citation omitted)).

## B. Deliberate Indifference to Serious Need

Assuming for the purposes of argument that Hancock's hernia constituted a serious medical need, we conclude that he has not demonstrated that the jail officials acted with deliberate indifference merely because they did not provide him with hernia repair surgery. At issue is whether jail officials "disregarded a known risk to [Hancock's] health." See Barton v. Taber, 820 F.3d 958, 965 (8th Cir. 2016) (internal quotation marks and citation omitted). This "requires a mental state 'akin to criminal recklessness.'" Jackson, 756 F.3d at 1065 (quoting Scott v. Benson, 742 F.3d 335, 340 (8th Cir. 2014)). "Grossly incompetent or inadequate care can constitute deliberate indifference in violation of the Eighth Amendment where the treatment is so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Dulany v. Carnahan, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

Hancock alleges that Greene County had a policy of requiring inmates with serious medical needs to prepay for all care from an outside provider. He further alleges that he was denied hernia repair surgery because of this policy and argues that

the "issue here is whether Defendants' failure to provide [Hancock's] hernia surgery *solely because of his inability to pre-pay* constitutes deliberate indifference," not "whether the care provided to Hancock after it was determined that he had a serious medical need was adequate." This misunderstands our analysis. When there is evidence "that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." Dulany, 132 F.3d at 1240. A prison doctor is not liable merely because he did not implement the inmate's preferred treatment. See id. ("[A]n inmate is not entitled to any particular course of treatment."). Hancock was seen by the jail physician or nurses more than thirty times and made only intermittent complaints related to his hernia. Despite Hancock's subjective reports of pain, objective observations did not indicate that he was in severe pain or forced to limit his activities. We conclude that Hancock has not demonstrated that jail officials disregarded a known risk to his health.

The judgment is affirmed.

_____