# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-3084

_____

Raymond Kelley

*Plaintiff - Appellee*

v.

Chad Pruett, Sergeant, Badge No. F8, Faulkner County Sheriff's Office; Terry
Roper, Deputy, Faulkner County Sheriff's Office

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: September 17, 2025
Filed: January 8, 2026

_____

Before SMITH, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Raymond Kelley filed this 42 U.S.C. § 1983 action against two Faulkner
County Sheriff's Office employees, Sergeant Chad Pruett and Deputy Terry Roper,
alleging that Pruett and Roper unlawfully arrested Kelley and used excessive force
during an encounter on Christmas Day in 2019. Pruett and Roper filed a motion for
summary judgment, based, in part, on qualified immunity, which the district court

granted with respect to the false arrest claim, but denied with respect to the excessive force claim against Pruett and Roper in their individual capacities. Pruett and Roper filed this interlocutory appeal, asserting that the district court erroneously denied them qualified immunity on the excessive force claim. We vacate the district court's order and remand for the district court to reconsider the qualified immunity analysis after construing the disputed facts in the light most favorable to Kelley.

I.

Early in the morning on December 25, 2019, Sergeant Pruett, who was patrolling a neighborhood in Conway, Arkansas, observed a white van sitting in a driveway with its lights on and the engine running. Sergeant Pruett continued his patrol, but when he returned to the residence and observed the van still in the driveway with its lights on and engine running, he stopped and got out of his patrol car. Sergeant Pruett approached the vehicle and knocked on the window to make contact with the driver, who rolled down the window and identified himself as Kelley and identified the residence as his own. Sergeant Pruett observed an open beer can in the center console and smelled the odor of alcohol coming from within the vehicle. Sergeant Pruett obtained Kelley's driver's license and ran his information with dispatch, who informed Pruett that Kelley had a previous DUI conviction and an active warrant out of Conway County. Sergeant Pruett also requested that dispatch send another unit to the scene. Kelley ultimately exited the vehicle and, after Sergeant Pruett patted him down, sat on a low wall on the side of the driveway while Sergeant Pruett was visually inspecting the van. Kelley then stood up and asked if he could call his wife; Sergeant Pruett told him to sit down and that he could not call his wife at that time. Instead of sitting back down, however, Kelley started to run up the driveway. Sergeant Pruett pursued Kelley up the driveway and ultimately tackled him to the ground and gained control of his wrist. Deputy Roper arrived on the scene after Sergeant Pruett had tackled Kelley to the ground and helped Sergeant Pruett secure Kelley and apply handcuffs. Kelley complained that he suffered an injury to his arm, and Deputy Roper called for medical services. While Kelley was being treated, Sergeant Pruett searched Kelley's

-2-

car and located multiple open beer cans and an ice chest filled with ice and cans of beer. Kelley refused transport to a hospital, and Sergeant Pruett issued to Kelley a citation for Public Intoxication and Resisting or Failure to Submit to Law Enforcement. Kelley ultimately signed the citations and was released.

While the parties do not dispute the foregoing, they vigorously dispute several additional facts, primarily as to Kelley's conduct during the incident, including whether and to what extent Kelley was combative and resistant, and the techniques and force used by Sergeant Pruett and Deputy Roper in securing Kelley in handcuffs. Kelley asserts that he did not resist at any point, that he was never told he was under arrest, and that Sergeant Pruett used excessive force after tackling Kelley such that, when Deputy Roper arrived, he stated to Pruett, "man, I thought that you were doing pushups on him." Sergeant Pruett and Deputy Roper assert that Kelley was combative and resistant throughout the encounter, that he continued to struggle and resist after Sergeant Pruett tackled him to the ground when he tried to flee, and that both Sergeant Pruett and Deputy Roper believed Kelley to be intoxicated. Further, Sergeant Pruett and Deputy Roper assert that they utilized standard law enforcement techniques in which they had been trained—an arm bar and wrist and elbow locks— to secure Kelley's hands behind his back and place him in handcuffs.

After the incident, Kelley filed this action, asserting claims under 42 U.S.C. § 1983 for unlawful arrest and excessive force against Sergeant Pruett and Deputy Roper in both their official and individual capacities. Pruett and Roper filed a motion for summary judgment, asserting that they were entitled to both qualified immunity and summary judgment as a matter of law on both of Kelley's claims. As relevant to this appeal, the district court denied qualified immunity on the excessive force claim against Sergeant Roper and Deputy Pruett in their individual capacities.[1] The

_____

[1]The district court granted summary judgment in favor of Sergeant Pruett and Deputy Roper as to the official capacity claims, finding that no reasonable juror could conclude that an official policy, custom, or practice caused the application of constitutionally excessive force or an unconstitutional arrest. The district court also

-3-

district court recounted each party's version of events, and then described the undisputed facts:

> [W]hen Deputy Pruett told Mr. Kelley that he could not call his wife at that time and needed to remain seated, Mr. Kelley abruptly stood up and began to run up the driveway toward his residence. The parties also do not dispute that, when Mr. Kelley suddenly fled on foot from Deputy Pruett, Deputy Pruett pursued and tackled Mr. Kelley and gained control of his wrist. It is undisputed that, after these events, Mr. Kelley refused transport by MEMS, which is the ambulance service.

The district court then discussed the dispute between the parties regarding the techniques Sergeant Pruett and Deputy Roper used on Kelley and to what extent, if any, Kelley resisted. The district court concluded:

> [T]hese disputed facts preclude the Court from ruling on defendants' specific request for qualified immunity under the circumstances. Defendants assert that no case has ever held that tackling a fleeing suspect, handcuffing the suspect, or utilizing the techniques by which these defendants accomplished the handcuffing of Mr. Kelley constitutes excessive force. There are disputed fact issues regarding "the techniques by which these defendants accomplished the handcuffing of Mr. Kelley" and regarding Mr. Kelley's conduct during that period, and these disputed fact issues should be resolved by a jury.

Sergeant Pruett and Deputy Roper then filed this interlocutory appeal, challenging the denial of qualified immunity on the excessive force claim.

II.

Sergeant Pruett and Deputy Roper assert that the district court erroneously denied them qualified immunity on the excessive force claim because, even construing the facts in the light most favorable Kelley, they used legally acceptable

---

granted summary judgment to Pruett and Roper on the false arrest claim under both § 1983 and state law. These decisions are not on appeal.

-4-

force, and no case has ever prohibited an officer from tackling a fleeing suspect or from handcuffing a suspect using standard handcuffing techniques. "We review a district court's qualified immunity determination on summary judgment de novo." Sterling v. Bd. of Trs. of the Univ. of Ark., 42 F.4th 901, 904 (8th Cir. 2022) (citation omitted). While "[w]e ordinarily lack jurisdiction over an interlocutory appeal challenging the denial of a motion for summary judgment, . . . we have jurisdiction when summary judgment is denied on the issue of qualified immunity." Id. (citation omitted). "[B]ut our jurisdiction is limited. We lack jurisdiction to review 'whether or not the pretrial record sets forth a "genuine" issue of fact for trial.' Rather, our jurisdiction allows us to review orders denying qualified immunity to the extent 'they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity.'" Watson v. Boyd, 2 F.4th 1106, 1109 (8th Cir. 2021) (second alteration in original) (citation omitted).

"At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" Stark v. Lee Cnty., 993 F.3d 622, 625 (8th Cir. 2021) (citations omitted). "When reviewing a law enforcement officer's entitlement to qualified immunity at summary judgment, a district court 'must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so "blatantly contradicted by the record . . . that no reasonable jury could believe [them]."'" Watson, 2 F.4th at 1110 (alterations in original) (citation omitted). "Then the court should determine if those facts demonstrate a constitutional violation that is clearly established." Handt v. Lynch, 681 F.3d 939, 945 (8th Cir. 2012).

Here, the district court completed the first part of its task in reviewing the record, but not the second. The district court determined which facts were genuinely disputed, but then, instead of construing those facts in the light most favorable to Kelley and then setting forth those facts, it merely stated that "[t]here are disputed

fact issues . . . , and these disputed fact issues should be resolved by a jury" and denied qualified immunity on that basis. Stopping there, the district court also did not consider the clearly established prong of the qualified immunity analysis. "While a district court may address the prongs in any order, it 'may not deny qualified immunity without answering both questions in the plaintiff's favor.'" Watson, 2 F.4th at 1112 (citation omitted). The district court should have identified the disputed facts, construed them in the light most favorable to Kelley, and then considered, on those facts, whether Kelley had shown a violation of a constitutional right that was clearly established at the time of the incident. See Shannon v. Koehler, 616 F.3d 855, 864 n.5 (8th Cir. 2010) ("When qualified immunity is raised at the summary judgment stage, the proper course is to view the facts and draw reasonable inferences in the light most favorable to the plaintiff—which 'usually means adopting . . . the plaintiff's version of the facts'—and then to assess the constitutionality of the challenged conduct." (alteration in original) (citation omitted)).

"If the district court fails to make a factual finding on an issue relevant to our purely legal review, we 'determine what facts the district court, in the light most favorable to the nonmoving party, *likely* assumed.'" Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (citation omitted). Here, the district court necessarily assumed certain allegations by Kelley were plausible and that disputes of fact exist. "'Because qualified immunity is "an immunity from suit rather than a mere defense to liability"' and 'is effectively lost if a case is erroneously permitted to go to trial,' law enforcement officers are at least 'entitled to a thorough determination of their claim of qualified immunity if that immunity is to mean anything at all.'" Watson, 2 F.4th at 1110 (citation omitted). Accordingly, "[w]hen the district court's order being appealed sets forth an analysis insufficient to provide a meaningful basis for review, we have found it necessary to remand the order for a detailed consideration of the issue of qualified immunity." Sterling, 42 F.4th at 904 (citation omitted). We thus remand to the district court to allow it to consider both prongs of the qualified immunity analysis after construing the disputed facts in the light most favorable to Kelley.

## III.

For the foregoing reasons, we vacate the district court's order and remand the case for a more detailed consideration of Sergeant Pruett and Deputy Roper's claim to qualified immunity in a manner consistent with this opinion.

SMITH, Circuit Judge, dissenting.

The majority concludes that this case should be remanded to the district court to determine what facts are in genuine dispute. I would not remand this case but would affirm the district court's denial of qualified immunity. The record reveals that the principal fact disputes are the level of force used by the officers in arresting Kelley and whether Kelley resisted that arrest. The district court concluded that it could not determine (1) "what techniques Deputies Pruett and Roper used during the arrest" nor (2) "whether, and if so to what extent, Mr. Kelley resisted arrest once Mr. Kelley stopped retreating up his driveway." Kelley alleged sufficient force to be excessive if Kelley were not resisting as he alleged and where the arresting officer applied the techniques that Kelley alleged, and using the force suggested by the observing officer's alleged statement (that the arresting officer was "doing pushups" on Kelley). The district court determined that a jury should resolve the technique and force-used disputes. I agree and would affirm. If the alleged force is assumed to be true against a non-resisting arrestee, the clearly established requirement would be met. *Graham v. Connor*, 490 U.S. 386 (1989); *Neal v. Ficcadenti*, 895 F.3d 576, 582 (8th Cir. 2018). I therefore respectfully dissent.

_____